Jordan D. Jeter, OSB No. 165437
  Direct:  503.802.2076
  Email:  Jordan.Jeter@tonkon.com
Tonkon Torp LLP
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Facsimile:  503.274.8779
   *Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(PORTLAND DIVISION)

| | |
|---|---|
| LIAM JOHNSTON,<br><br>    Plaintiff,<br><br>  v.<br><br>ICASHE, INC., A DELAWARE CORPORATION DBA PURS.DIGITAL,<br><br>    Defendant. | Civil No. 3:25-CV-01560-JR<br><br>**DEFENDANT ICASHE, INC.'S MOTION TO DISMISS**<br><br>Oral Argument Requested |

**LR 7-1(A) CERTIFICATION**

Pursuant to LR 7-1(a), counsel for Defendant iCashe, Inc., a Delaware Corporation DBA Purs.Digital ("iCashe" or "Defendant"), certify that they made a good faith conferral effort through personal or telephone conference with Plaintiff.  As a result of that conferral, Plaintiff has agreed to voluntarily dismiss the claim for Negligent Misrepresentation (Third Claim). Otherwise, the parties were unable to resolve the issues raised in this Motion.

**MOTION**

Defendant respectfully moves to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim upon which relief can be granted. The grounds for the Motion are set forth below.  This Motion is supported by Defendant's

PAGE 1 – DEFENDANT ICASHE, INC.'S MOTION TO DISMISS

accompanying memorandum of law, exhibits, and the pleadings and records contained in the Court's file.

## MEMORANDUM OF LAW

### I.  INTRODUCTION

This is an action brought by *pro se* Plaintiff Liam Johnston ("Plaintiff") against iCashe for five claims relating to Plaintiff's employment with Defendant and the termination of that relationship. Plaintiff cannot, however, state any of his alleged claims because **he voluntarily waived all such claims** when he signed a valid and enforceable separation agreement and release of claims at termination. For that reason, iCashe asks this Court to dismiss the Complaint in its entirety with prejudice.

In the alternative, iCashe asks this Court to dismiss two of Plaintiff's claims for failure to state a claim:

• **Violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Fourth Claim):** Plaintiff lacks standing to bring a claim under RICO because, under Ninth Circuit precedent, termination of employment is not an injury that can sustain a RICO claim.

• **Lost Wages and Economic Damages (Fifth Claim):** Plaintiff's claim for lost wages should be dismissed for failure to state a claim because Plaintiff has alleged no statutory or contractual obligation for iCashe to owe him additional wages.

Given the deficiencies in Plaintiff's allegations, Defendant asks this Court to dismiss the Complaint.

### II.  BACKGROUND FACTS

Defendant employed Plaintiff from June 2022 to July 2023. (Compl. ¶¶ 22, 38.) At termination, iCashe offered Plaintiff a Separation Agreement and Release of Claims ("Release Agreement") in exchange for a severance payment. (Compl. ¶¶ 39-42.)[1] Plaintiff accepted that

---

[1] As referred to in Plaintiff's Complaint, a true and accurate copy (in redacted form) of the Release Agreement, signed by Plaintiff, is attached as **Exhibit A**.

offer, signed the Release Agreement whereby he released all claims releasable by law, and received the severance payment. (*Id.*)

## III.    ARGUMENT

### A.    Standards governing FRCP 12(b)(6) motions to dismiss.

FRCP 12(b)(6) governs a motion to dismiss for failure to state a claim. *Tracht Gut, LLC v. LA County Treasurer & Tax Collector, et al.*, 836 F.3d 1146, 1150 (9th Cir. 2016). The rule allows a court to dismiss a claim when it "fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

On an FCRP 12(b)(6) motion to dismiss, a court accepts as true all well-pleaded factual allegations in the Complaint and draws all reasonable inferences in favor of the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). The court must disregard legal conclusions, even when disguised as facts. *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.") Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). It is insufficient to provide "threadbare recitals of a cause of action's elements, supported by mere conclusory statements * * *." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Instead, a Complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (citation omitted). In addition, the Complaint must state a "plausible" claim for relief. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

PAGE 3 –  DEFENDANT ICASHE, INC.'S MOTION TO DISMISS

### B. The Court should dismiss the Complaint in its entirety because Plaintiff waived and released all claims against Defendant in a fully executed and enforceable Release Agreement.

At termination, Plaintiff signed the Release Agreement that waives all of the claims he raises in this lawsuit. In that release, Plaintiff waived any and all known or unknown claims that are waivable by law. He does not dispute that he signed the Release Agreement. (Compl. ¶¶ 39-42.)[2] The reality is that Plaintiff entered into a valid and enforceable contract, whereby Defendant agreed to pay Plaintiff a severance (which it did) and, in exchange, Plaintiff agreed to release any and all claims against Defendant. Accordingly, Plaintiff's claims must be dismissed with prejudice.

Oregon courts favor and regularly enforce release agreements because of their certainty and judicial efficiency. *See Graves v. Tulleners*, 205 Or. App. 267, 279 (2006) (quoting *Lindgren v. Berg*, 307 Or. 659, 665, (1989)) ("Release agreements are favored under the law because 'certainty and judicial economy are served when parties can negotiate settlement of their disputes with confidence that their settlement agreements will be upheld and enforced by the courts.'") (internal citations omitted).[3] A release agreement is "a contract in which one or more parties agrees to abandon a claim or right." *Id*. A general release from all claims and demands "is sufficient to bar a specific claim, unless the claim is excepted from the release agreement." *Ristau v. Wescold, Inc.*, 318 Or. 383, 389 (1994). *See also McFarlin v. Gormley*, 2008 WL 10104, at *5-6 (D. Or. 2008) (interpreting Oregon law). Without a showing that an agreement

---

[2] Plaintiff filed a state small claims action (Multnomah County Small Claims Case No. 25SC14401), seeking a declaratory judgment that the Release Agreement is void and cannot be used against him in his civil lawsuit against Defendant. (Compl. ¶ 44.) There is no legal basis for Plaintiff's argument. Plaintiff cannot divest this Court of its authority to enforce the Release Agreement, nor can he prohibit Defendant from relying on a valid contract it formed with Plaintiff as a defense to this action.

[3] When a court hears state law claims based on supplemental jurisdiction, the court applies state substantive law to state law claims. *Mason and Dixon Intermodal, Inc. v. Lapmaster Intern. LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).

PAGE 4 – DEFENDANT ICASHE, INC.'S MOTION TO DISMISS

was obtained by misrepresentation or unconscionable conduct, even an improvident agreement must be enforced. *Wheeler v. White Rock Bottling Co.*, 229 Or. 360, 366 (1961).

Pursuant to Plaintiff's signed Release Agreement, iCashe paid Plaintiff separation pay in exchange for a release of claims. In relevant part, Plaintiff agreed:

> [T]o forever waive and release [iCashe] * * * from all known and unknown claims, rights, actions complaints * * * arising out of (i) any aspect of [Plaintiff's] employment or its termination; * * * (iii) any common law or statutory torts; (iv) any federal, state, local or governmental constitution, statute, regulation or ordinance, including, without limitation, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, * * * the Equal Pay Act, * * * ORS Chapters 652, 653, 654, and 659, and any other federal, state, or local laws prohibits discrimination or retaliation in employment based on any protected characteristics[.]

(Exhibit A, ¶ 3.1.) All of the claims Plaintiff raises in this lawsuit fall within that release. Plaintiff further expressly agreed that he would not "lodge, file, or bring any suit, charge, complaint, or any other form of action against [iCashe] relating in any way whatsoever to any matters released herein." (Exhibit A, ¶ 5.) Yet, he filed this lawsuit and a lawsuit in Multnomah County Small Claims Court concerning the termination of his employment.

The Release Agreement is valid and enforceable. First, the agreement carved out all rights which as a matter of law cannot be waived. (Exhibit A, ¶ 3.2.) Second, the agreement made clear that any confidentiality and non-disparagement obligations did **not** include conduct that Plaintiff reasonably believed to be unlawful harassment, discrimination, retaliation, wage and hour violations, and/or sexual assault, or any other conduct constituting discrimination under ORS 659A.030, ORS 659A.082, or ORS 659A.112.2.[4] (Exhibit A, ¶ 2.3.) Third, there are no

---

[4] Pursuant to ORS 659A.370, commonly referred to as the "Oregon Workplace Fairness Act" or "OFWA," except as provided in the statute, employers cannot enter into agreements with employees that contain non-disclosure or non-disparagement provisions that prevent an employee from discussing discrimination prohibited by ORS 659A.030, ORS 659A.082, or ORS 59A.112. Here, the Release Agreement **specifically excluded** such topics from the non-disparagement provision and, therefore, complied with OWFA.

PAGE 5 – DEFENDANT ICASHE, INC.'S MOTION TO DISMISS

allegations that the agreement was obtained by misrepresentation or unconscionable conduct. There is, therefore, no basis to set aside the parties' agreement.

Plaintiff entered a contract with iCashe whereby he agreed to abandon any and all claims releasable by law. He was paid adequate consideration for his release. He cannot now attempt to skirt those obligations by filing claims that are covered within the scope of the release. He has waived these claims, and iCashe respectfully requests this Court dismiss his claims with prejudice.

### C.  Even without the valid Release, Plaintiff has failed to state a claim for two of his claims.

Even if Plaintiff had not waived all of the claims he now asserts, he has failed to state facts sufficient to meet the elements for two of his claims. Each of these flaws is not merely technical; instead, each is fatal to Plaintiff's claim and not remediable. The claims should, therefore, be dismissed with prejudice.

#### 1.  Plaintiff cannot state a claim for RICO (Fourth Claim) because he does not have standing to bring such a claim.

RICO is a statutory scheme aimed at combatting organized crime; it contains both criminal violations and penalties as well as a civil private cause of action. RICO's private cause of action is found in 18 U.S.C. § 1964(c), which provides in relevant part that "[a]ny person injured in his business or property by reason of Section 1962 of this chapter" may sue to recover

---

In situations where an employee has **already raised** a claim against an employer prior to reaching an agreement, ORS 659A.370(2)(a) places additional obligations on employers, including, among other things, providing a copy of the employer's anti-harassment policy. Here, Plaintiff does not allege that he raised any claims of discrimination to iCashe prior to his termination. Therefore, ORS 659A.370(2)(a) does not apply.

Of note, prior to this lawsuit, Plaintiff filed a charge with the Bureau of Labor and Industries ("BOLI"). BOLI is the state agency charged with enforcing OFWA. BOLI dismissed Plaintiff's charge and, according to Plaintiff, concluded that it was unlikely to take further action "as a result of the release of claims[.]" (Compl. ¶ 42.) Therefore, BOLI concluded the Release Agreement was valid and complied with OFWA.

PAGE 6 – DEFENDANT ICASHE, INC.'S MOTION TO DISMISS

treble damages.  Section 1962 contains RICO's criminal prohibitions.  Plaintiff does not specify on which provision of Section 1962 he relies, but RICO generally makes it unlawful for an "enterprise" engaged in or affecting interstate commerce to "conduct" their affairs through a "pattern" of "racketeering activity."  The term "racketeering activity" is defined to include specific predicate acts, such as wire fraud, money laundering, etc.  18 U.S.C. § 1961(1) (listing the specific statutory violations that fall within the definition of "racketeering activity").

To bring a private cause of action under RICO, Plaintiff must meet the standing requirement of 18 U.S.C. § 1964(c).  That requires a showing that he was "injured in his business or property **by reason** of" the alleged RICO violation.  (Emphasis added.)  That standing requirement is well established in case law:  The only compensable injury under the RICO statute is for harm **caused by** the predicate acts.  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985).  Not all injuries, therefore, give a plaintiff standing to bring a civil RICO claim; only those injuries that are caused by the underlying racketeering activities.

Here, Plaintiff alleges that he "suffered injury to his business or property as a result of Defendant's RICO violation, **specifically the abrupt termination of his employment**[.]" (Compl. ¶ 82.h (emphasis added).)  The Ninth Circuit follows the majority view that termination of employment is insufficient to establish injury under RICO:  "an employee who is wrongfully discharged for refusing to participate in an alleged pattern of racketeering activity lacks standing to sue under § 1962(c)."  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 294 (9th Cir. 1990); *see also Burdick v. American Express Co.*, 865 F.2d 527, 529 (2d Cir. 1989) (*per curiam*) (employee terminated as a result of his complaints about employer's alleged fraudulent activities had no standing to sue under § 1962(c)); *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1215–16 (5th Cir. 1988) (plaintiff employee's discharge for refusing to participate in a fraudulent bank loan scheme did not satisfy § 1962(c) standing requirement); *Nodine v. Textron, Inc.*, 819 F.2d 347, 349 (1st Cir. 1987) (employee's termination after he reported violations of Canadian customs laws and Foreign Corrupt Practices Act to his superiors did not confer standing under § 1962(c)); *Morast v. Lance*, 807 F.2d 926, 933 (11th Cir. 1987) (employee discharged for reporting

irregular transactions to the Comptroller of the Currency had no standing to sue under § 1962(c)).

In his Complaint, Plaintiff relies on the Seventh Circuit case of *DeGuelle v. Camilli*, 664 F.3d 192 (7th Cir. 2011), to assert that he suffered injury to his business or property based on the alleged retaliatory termination. (Compl. ¶ 82.h.) That reliance is misplaced. In *DeGuelle*, the plaintiff alleged that he suffered injury to his business or property because he was terminated from his employment, sued in court, and defamed in the local media. *Id.* at 199. More specifically, the plaintiff relied on the Sarbanes-Oxley Act, 18 U.S.C. § 1513, as a predicate act, which makes it unlawful to retaliate against a person **for providing to a law enforcement officer** any truthful information relating to the commission or possible commission of a crime. 18 U.S.C. § 1513(e).[5] Violations of the Sarbanes-Oxley Act are explicitly included in the statutory definition of racketeering activity. *See* 18 U.S.C. § 1961(1). In that situation, the *DeGuelle* court concluded that the retaliatory firing, along with the other two injuries the plaintiff had alleged, were caused by the underlying alleged racketeering activity, the Sarbanes-Oxley Act violation, which itself was a retaliatory act. *DeGuelle* made clear, however, that not all retaliatory acts will be related to the underlying wrongdoing, and that, subsequent to the addition of the Sarbanes-Oxley Act to the list of predicate crimes for RICO, many courts—as the

---

[5] To be clear, Plaintiff here does not allege that iCashe violated 18 U.S.C. § 1513. In describing his alleged injury, Plaintiff makes reference to "obstruction under 18 U.S.C. § 1513(e)," but nowhere in the Complaint does he otherwise allege a violation of the Sarbanes-Oxley Act. (Compl. ¶ 86). Instead, the alleged racketeering activity in the Complaint includes wire fraud (18 U.S.C. § 1343), money laundering and conspiracy to commit money laundering (18 U.S.C. § 1956), operating an unlicensed money transmitting business (18 U.S.C. § 1960), and visa fraud (18 U.S.C. § 1546).

Furthermore, Plaintiff's Complaint does not allege that he provided any information **to law enforcement** prior to his termination, as would be necessary to plead a violation of the Sarbanes-Oxley Act. The only alleged contact with any government official was nearly two years **after** his termination. As a matter of logic, even if we assume that government official was "law enforcement," iCashe could not have terminated Plaintiff's employment based on that contact as it occurred after his termination.

Ninth Circuit did in *Reddy*—maintain that a plaintiff cannot rely on a retaliatory firing that was not caused by the alleged racketeering activity. 664 F.3d 192 at 201, n. 3.

Plaintiff further relies on *Medical Marijuana, Inc. v. Horn*, 145 S. Ct. 931 (2025), for the proposition that retaliatory termination constitutes actionable injury under RICO. (Compl. ¶ 86.) But that was not a holding of *Horn*, nor was it the question before the Court. Indeed, the Court was clear that the question before it was narrow. The Court explicitly did not decide whether injury to "business" correctly encompasses "employment." *Id.* at 938. And the Court explicitly did not decide whether the plaintiff had suffered an "injury to property" when he lost his job. *Id.* Instead, the **only** question the Court addressed is whether civil RICO bars recovery for all business or property harms that derive from a **personal injury**. Here, Plaintiff has not alleged a personal injury, and *Horn* is inapplicable.

To reiterate, standing to bring a civil RICO claim under 18 U.S.C. § 1964(c) is limited to a person with an injury that is **caused by** the alleged racketeering activity. A plaintiff may not, therefore, bring suit under Section 1964(c) for injuries caused by an overt act that is not an act of racketeering. *Beck v. Prupis*, 529 U.S. 494, 507 (2000). The overt acts that constitute "racketeering activities" are specifically named by statute, 18 U.S.C. § 1961, and retaliatory or wrongful termination, apart from those covered under the Sarbanes-Oxley Act, are not among those acts. Plaintiff cannot, therefore, rely on his termination as the injury that gives him standing to bring a RICO claim because that "injury" was not caused by a racketeering activity.

Without standing under 18 U.S.C. § 1964(c), Plaintiff's RICO claim must be dismissed with prejudice.

> **2.    Plaintiff cannot state a claim for lost wages (Fifth Claim) because he has not alleged that iCashe owes him any unpaid wages.**

In his Fifth Claim, Plaintiff alleges that he is entitled to "back pay representing the difference between his actual compensation and market-rate compensation for the period of his employment." (Compl. ¶ 90.) He cites no statutory, regulatory, or case authority for that proposition. To support his claim, Plaintiff alleges that the median salary for "member of the

PAGE 9 – DEFENDANT ICASHE, INC.'S MOTION TO DISMISS

technical staff" in Portland is $231,000. (Compl. ¶ 25.) He provides no support for that allegation or explanation for why that salary would apply to him. He acknowledges that iCashe offered him an annual salary of $69,000, and that he accepted that offer in his signed employment agreement. (Compl. ¶ 24.) He does not allege that iCashe failed to pay him those promised wages. Instead, he appears to assert that the Court should order iCashe pay him more because he accepted a role he now believes should have come with higher pay. Put simply, he has alleged no cognizable legal theory for the relief he requests, nor does one exist.

At a base level, the only wages that iCashe owed Plaintiff are those that it promised him in exchange for the work he performed. *See* ORS 652.210(11) ("wages" means all compensation for performance of service by an employee for an employer). There is no statutory or contractual basis to support Plaintiff's claim that iCashe must pay him what he has now alleged is "market-rate," nor does Plaintiff cite to any such authority. Absent a contractual requirement to pay Plaintiff market-rate, iCashe had no obligation to pay him more than what it promised: $69,000. Plaintiff does not allege that iCashe failed to pay him that promised salary. He has failed to state an actionable wage claim, and it should be dismissed.

## IV.    CONCLUSION

In short, Plaintiff has waived the very claims he now raises against Defendant. And, even if he hadn't waived the claims, Plaintiff has failed to state a claim for two of his claims. For those reasons, iCashe requests that the Court dismiss the Complaint with prejudice.

DATED: September 9, 2025.

                              TONKON TORP LLP

                              By:   *s/ Jordan D. Jeter*
                                    Jordan D. Jeter, OSB No. 165437
                                    Direct:  503.802.2076
                                    Email:  Jordan.Jeter@tonkon.com

                              *Attorneys for Defendant*

**CONFIDENTIAL**



Corporate Headquarters
5331 S Macadam Ave, Suite 251
Portland, OR 97239
503.226.3939

**PERSONAL AND CONFIDENTIAL**

DELIVERED PERSONALLY & ELECTRONICALLY

July 24, 2023

Liam Johnston
capsaicinkid@gmail.com

    Re:    <u>Separation Agreement and Release</u>

Dear Liam:

This will confirm that your employment with iCashe, Inc. (the "Company") will end effective July 24, 2023 ("Separation Date"). The Company wishes to offer you a severance package in connection with the separation of your employment. This letter ("Agreement") sets forth the terms and conditions of the severance package the Company is offering you.

1. <u>Termination of Employment & Separation Package</u>.

    1.1. Your employment will terminate for all purposes on the Separation Date. Your final paycheck (less withholdings and deductions), is being paid to you on the Separation Date.

    1.2. <u>Separation Pay</u>: If you sign and return this Agreement, the Company will pay you separation pay totaling [REDACTED] less legally required withholdings and deductions (the "Separation Pay"). The Separation Pay will be sent to you via direct deposit no later than 10 business days after the Effective Date as defined at the end of this Agreement.

2. <u>Return of Company Property; Continuing Obligations; Confidentiality; Non-Disparagement</u>.

    2.1. You represent that as of the Separation Date you will have returned or made plans to return your Company-issued laptop, all keys and other means of access to the property of the Company, as well as all other Company Property, equipment, supplies, credit cards, software, records, and documents in your possession or under your control.

    2.2. Pursuant to the Non-Competition, Confidentiality, and Proprietary Rights Agreement you signed at the start of your employment, you acknowledge, and expressly agree to abide by, your ongoing obligations under that agreement, with

<div style="text-align:center"><strong style="color:red">CONFIDENTIAL</strong></div>

the sole exception being that the Company hereby advises you that you are released from the restrictions in Paragraph 8 ("Non-competition") of that agreement.

2.3. You agree that you will not publish or otherwise make any maliciously false or disparaging statements about the Company. You further agree to keep the terms of the Separation Pay confidential, with the exception that you may share such terms and information with your immediate family, accountant, attorney, or as otherwise required by law. The Company hereby advises you that nothing in this Agreement prohibits you from discussing conduct you reasonably believe to be unlawful harassment, discrimination, retaliation, wage and hour violations, and/or sexual assault, or any other conduct constituting discrimination under ORS 659A.030, 659A.082, or 659A.112. Further, nothing in this Section or Agreement should be construed to interfere with your rights to exercise, assert or enforce your rights under the National Labor Relations Act generally, or Section 7 thereof specifically.

2.4. You understand and agree that the representations and covenants made by you and set forth in this paragraph are essential and material to the Company, and the Company would not have entered into this Agreement except for your representations and commitments.

3. Release of Claims.

3.1. You agree to forever waive and release the Company, and its current and former parent companies, subsidiaries, and other affiliated companies, as well as any of their respective current and former owners, directors, officers, agents, shareholders, insurers, attorneys, board members, agents, and employees, and all persons acting by, through, under or in concert with any of them (collectively, "Released Parties"), from all known and unknown claims, rights, actions, complaints, charges, liabilities, damages, obligations, promises, agreements, causes of action, suits, demands, costs, losses, debts, and expenses of any nature whatsoever which you ever had, now have, or may claim to have, including, without limitation, any claim arising out of (i) any aspect of your employment or its termination; (ii) any agreement, oral or written, express or implied, between you and any of the Released Parties, including, without limitation, any employment agreement; (iii) any common law or statutory torts; (iv) any federal, state, local or governmental constitution, statute, regulation or ordinance, including, without limitation, Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Family and Medical Leave Act, the Age Discrimination in Employment Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974, ORS Chapters 652, 653, 654, and 659A, and any other federal, state, or local laws prohibiting discrimination or retaliation in employment based on any protected characteristics, and (v) any claim for salary, wages, commissions, bonuses, meal/rest breaks, attorneys fees, and/or any other compensation or benefit.

**CONFIDENTIAL**

3.2. The waiver and release in this Agreement does not apply to those rights which as a matter of law cannot be waived, such as claims for alleged workplace injuries under applicable workers' compensation laws, or for unemployment compensation benefits. Nothing in the Agreement limits your right to or ability to file a charge or claim of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Bureau of Labor & Industries ("BOLI"), or comparable state or local agencies. You retain the right to bring any such claims or to testify, assist, or participate in any investigation of such claims. However, by signing this Agreement, you expressly waive and release any right to damages, costs, and fees arising out of such claims filed with the EEOC, BOLI, or comparable state or local agencies.

4. Full Understanding and Voluntary Acceptance. You agree that you understand all the terms of this Agreement. You are executing this Agreement voluntarily with full knowledge of its significance.

5. Covenant Not to Sue. You expressly agree that you will not lodge, file, or bring any suit, charge, complaint, or any other form of action against the Company relating in any way whatsoever to any matters released herein. You represent that, as of the date you execute this Agreement, you have not filed or caused to be filed any pending claims against the Company.

6. Unemployment Benefits. Should you make a claim for unemployment benefits with the State of Oregon regarding the termination of your employment with the Company, the Company agrees not to contest your application for such benefits. Should representatives of the Company be asked factual questions by any entity in connection with your application for unemployment benefits, said representatives will respond truthfully to any such questions. Accordingly, the Company cannot and does not make any representations or assurances that unemployment benefits will be awarded, as that decision is solely made by the Oregon Employment Department.

7. No Assignment of Claims. You represent and warrant that you have not assigned, transferred or liened, or purported to assign, transfer or suffered a lien, voluntarily or involuntarily to any person or entity all or any part of any right, claim, debt, liability, obligation, or counteraction that is released by this Agreement.

8. Non-Admission. Nothing contained in this Agreement shall be considered an admission of any wrongdoing or liability whatsoever by the Company.

9. Severability. Should any clause, sentence or paragraph of this Agreement be declared void or unenforceable, such portion shall be considered independent and severable from the remainder of the Agreement, the validity of which shall remain unaffected. However, if Section 3.1 is declared void or unenforceable by a court of competent jurisdiction, you agree that the Separation Pay will be immediately due and owing to the Company.

**CONFIDENTIAL**

10. <u>Governing Law/Arbitration</u>. This Agreement is made and entered into in the State of Oregon, and shall in all respects be interpreted, enforced and governed under the laws of Oregon. To the fullest extent allowed by law, any dispute regarding your employment with the Company or its termination, any aspect of this Agreement or any act which allegedly has or would violate any provision of this Agreement, shall be settled by final and binding arbitration in the county of your employment with the Company, in accordance with the applicable rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

11. <u>Entire Agreement</u>. This Agreement constitutes the entire integrated agreement between you and the Company pertaining to the Agreement's subject matter and supersedes any and all prior agreements, understandings, negotiations and discussions, whether oral or written, pertaining to its subject matter. Any modification to this Agreement must be in writing and signed by both you and the Company.

12. <u>Effective Date</u>. If you decide to agree to the terms in this Agreement and sign it, the Agreement will become effective once you have both signed and returned the Agreement to the Company ("Effective Date").

If the terms of the severance package as set forth above are acceptable to you, please sign and return this Agreement directly to Christian Trummer (christian.trummer@icashe.com). Once the Company receives the executed Agreement, we will start processing your Severance Pay. This severance package offer, if not accepted, will expire at 5:00 p.m. PST on July 31, 2023. If you have any questions regarding the severance package, or any aspect of your employment, please do not hesitate to contact me personally.

Sincerely,

*for Siva*
*[signature]*

Siva Narendra
President
siva@icashe.com
iCashe, Inc.

-4-

<div style="color:red; text-align:center; font-weight:bold;">CONFIDENTIAL</div>

I HAVE READ, UNDERSTAND AND VOLUNTARILY AGREE TO THE ABOVE. I UNDERSTAND AND ACKNOWLEDGE THAT I AM WAIVING KNOWN AND UNKNOWN CLAIMS.

Executed this ____ day of _____, 2023.

_____
Signature of Liam Johnston

037617\00007\14447066v1

-5-